KLEIN et al. v. DARNELL et al.

(Circuit Court of Appeals, Fifth Circuit. February 24, 1917. Rehearing Denied March 30, 1917.)

No. 2966.

1. MORTGAGES ⊛48(2)—DESCRIPTION—AMBIGUITY.

Where there were two surveys of land in Bowie county under the same name, one being about 10 miles southwest of the city of Boston and the other about 14 miles therefrom, a deed of trust describing the property as the "east half of the" survey, "situated about 14 miles southwest from Boston, in Bowie county," is sufficient; the description identifying only one of the surveys.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 127.]

2. MORTGAGES ⊛553—FORECLOSURE—ACQUISITION OF TITLE BY TENANT—BURDEN OF PROOF.

Where defendant was a tenant of plaintiff when he acquired an outstanding title based on foreclosure of a deed of trust, defendant has the burden of proving the regularity of the foreclosure proceedings.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1581.]

3. EVIDENCE ⊛317(12)—HEARSAY.

Where the validity of a sale on foreclosure of a deed of trust, which provided that, if the trustee named should fail or refuse to act or became disqualified, the beneficiary should have full power to appoint a substitute in writing, was involved, testimony by the substituted trustee, who held the sale, that the original trustee, in response to his inquiry, wrote

him that he had declined to act, is inadmissible, being hearsay; the refusal of the original trustee occurring before the inquiry was made.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1185.]

4. APPEAL AND ERROR ☞1050(1)—REVIEW—HARMLESS ERROR.

In such case, where the beneficiary of the deed of trust was the only witness to the refusal of the trustee to act, the erroneous admission of the hearsay testimony cannot be treated as harmless, on the theory that it did not affect the jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153, 4157.]

5. APPEAL AND ERROR ☞230—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—OBJECTIONS—NECESSITY.

Where it did not appear that the objection to the testimony was made before the witness answered the question, the receipt thereof cannot be complained of on appeal.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 183.]

In Error to the District Court of the United States for the Eastern District of Texas; Gordon Russell, Judge.

Trespass to try title by Samuel Klein and others against J. T. Darnell and others. There was a judgment for defendants, and plaintiffs bring error. Reversed and remanded.

F. M. Etheridge, J. M. McCormick, and H. L. Bromberg, all of Dallas, Tex., for plaintiffs in error.

Rollin W. Rodgers, of Texarkana, Tex., and George W. Johnson, of New Boston, Tex., for defendants in error.

Before WALKER, Circuit Judge, and GRUBB, District Judge.

GRUBB, District Judge. This was an action of trespass to try titles, instituted by the plaintiffs in error against the defendants in error to recover about 873 acres of land in Bowie county, Tex. The defendants in error disclaimed as to all except 320 acres, the remainder being described as the east half of the Logwood survey, and it was the title to this tract that was in controversy. W. P. Lash was the common source of title. The plaintiffs in error traced title from him, which was good, unless because of a deed of trust executed by Lash to L. McQueen on the 8th day of September, 1898, and before plaintiffs in error's predecessor acquired title from Lash. The defendants in error claim title under this deed of trust. The respective claims of the parties revolve about the validity of the deed of trust and of the proceeding to foreclose it. If both were valid, title is vested in the defendants in error. If either is invalid, then the plaintiffs in error have the legal title.

[1] The deed of trust is assailed because of an alleged insufficient description of the premises conveyed. The description is as follows:

"The east one-half of the T. Y. Logwood headright of land, situated about 14 miles southwest from Boston, in Bowie county, Texas, containing 320 acres."

The description is concededly sufficient on its face. Its alleged insufficiency arises out of the fact that there were two T. Y. Logwood surveys in Bowie county, Tex., and it is claimed the description would

equally fit either, and that thereby an ambiguity is created, patent if judicial notice is taken of the different surveys, or latent if proof of the fact that there were two such surveys is required. The other T. Y. Logwood survey is shown to have been about 10 miles southwest of Boston, in said county. Whether judicial notice be taken of the surveys shown by the county map or not, we think the map itself and the evidence of Johnson, the county surveyor, sufficiently differentiates the two surveys, as to show that the description in the deed of trust is properly referable only to the one here in controversy, and that the record of the deed of trust put subsequent purchasers on notice that it affected the title to the land in controversy. We think the District Court properly ruled on this issue.

[2] The remaining criticism of the title, set up by defendants in error, is the sufficiency of the foreclosure of the trust deed. The fact that the defendant in error Darnell had been and probably was a tenant of the predecessors in title of the plaintiffs in error when the title asserted by him was acquired placed the burden on defendants in error to establish their title to the land in controversy. This required of them to prove the validity of the foreclosure proceeding, by means of which the title of W. P. Lash, the common source, became vested in the mortgagee, Hazard, through whom defendants in error claim.

[3, 4] But one infirmity in that proceeding is relied upon by plaintiffs in error. It is that the original trustee, McQueen, did not act, but the sale and deed were made by a substituted trustee, J. B. Manning, without, as is alleged, the proper authorization so to act. The trust deed provided that:

"Should the said L. McQueen from any cause whatever fail or refuse to act or become disqualified from acting as such trustee, then the said W. X. Hazard, or the legal holder of said promissory note, shall have full power to appoint a substitute in writing, who shall have the same powers as are hereby delegated to the said L. McQueen."

McQueen was in no way disqualified to act, and the substitution could only be justified by proof that he failed or refused to act. Whether he did or not was the narrow issue that was submitted to the jury by the District Judge. Hazard, the mortgagee, a witness for the defendants in error, testified that McQueen refused to act because old and feeble, and of the distance from his home to the place of sale in Bowie county. Evidence was offered by plaintiffs in error tending to show contradictory statements by Hazard in a written affidavit, the effect of which and of his entire evidence was properly left for the jury's determination.

In this situation of the case, the defendants in error were permitted, against plaintiffs in error's objection and exception, to prove by the witness J. B. Manning, the substituted trustee, that after his designation as trustee by the mortgagee, Hazard, doubting his authority to act, he wrote to the original trustee, McQueen, asking him if he had refused to act, and received a reply from McQueen to the effect that he had so refused. The reply letter was not produced, but its contents were proven by the witness. Conceding that a proper foundation for secondary evidence was laid, we still think this evidence was inadmissible,

and prejudicial to plaintiffs in error. It will be observed that the refusal to act is not claimed to have been made in this letter. It had been made, if made at all, before the letter was written, verbally to Hazard, to whom alone it could be made. Hazard had acted on it by designating Manning as a substituted trustee, and it was only after this that Manning wrote McQueen, asking confirmation of his refusal to act. The writing of the reply letter and its contents were no part of the res gestæ of the refusal, but a mere unsworn written declaration by the original trustee that he had, at a previous time, and to another person, refused to act. This was clearly hearsay evidence. Its effect was to corroborate Hazard, the only witness to the refusal, and a witness against whom impeaching evidence had been introduced, by the unsworn evidence of an absent witness McQueen, in the shape of narrative declarations of a past refusal, which were contained in a letter written by McQueen to the witness who testified. They were therefore received without the sanction of an oath, and the maker of them was not amenable to cross-examination. As they related directly to the only fact that was submitted to the jury, viz., the alleged refusal of McQueen to act as trustee, we cannot say that they did not influence the jury to find the fact of refusal, when upon the uncorroborated evidence of the mortgagee, Hazard, they might have been unwilling to do so. We are of the opinion that the admission of this evidence must work a reversal of the judgment.

[5] We find no other reversible error in the record. With relation to the evidence of the declaration of Meyers, agent for the plaintiffs in error, alleged to have been made to the witness, Shew, that the lawyers of the plaintiffs in error had procured him to fence the land because of some infirmity in the title, it is sufficient to say that the record does not affirmatively show that objection was interposed to the introduction of this evidence before the answer was delivered by the witness. The objection may have come too late, and the court's refusal to exclude, so far as appears from the record to the contrary, may have been based on that ground. We do not hold that the evidence was legal evidence or properly admitted.

The judgment is reversed, for the reason given, and the cause remanded for another trial.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes